JAMES ELSON *et al.*

*v.*

JOHN COMSTOCK.

*Filed at Ottawa May 8, 1894.*

1. DEDICATION—*by person not the owner.* In 1854 the husband of the owner of land made a plat thereof into blocks and lots, as an addition to a city, which plat showed a block without numbers, which was not divided into lots as were the other blocks, and upon the face of which were the words "Public Square," and the plat was recorded: *Held*, that there was no effectual dedication of the square by reason of the execution and recording of the plat.

2. A dedication of property for public use is in the nature of a conveyance for the purposes of the use, but a person can convey or donate no more or greater estate than he holds. If he has no title, or his title is conditional, and it fails, the dedication also will fail.

3. SAME—*vesting title in the village—rights of lot owners.* Whatever right the public may have to the use of a block marked in the plat of an addition as a public square, will, on the incorporation of the village in which it lies, vest in such village, as the representative of the public; and whatever easements or privileges the purchasers of lots in the addition are entitled to claim in such square as appurtenant to their lots, must be regarded as belonging to them as a part of the village so incorporated.

4. TRESPASS QUARE CLAUSUM FREGIT—*plea of liberum tenementum— judgment conclusive of title.* It has been held that if, in an action of trespass *quare clausum fregit*, the defense pleaded is *liberum tenementum*, judgment for the plaintiff is conclusive upon the defendant

when he afterward attempts to set up title, subject to the qualification that the close described in the second action is the same as that described in the first.

5. Other decisions hold, that while the judgment in such case will not be regarded as conclusive, yet it may be shown by parol evidence, or otherwise, that the question of title was actually tried and passed upon in the action of trespass. Such a judgment is necessarily conclusive as to what appears from the record or is shown by parol to have been involved in the issues made by the pleadings in the suit, and to have actually come in question on the trial.

6. In an action of trespass *quare clausum fregit,* brought in respect to a block of land in a village, the defendant pleaded title in the village, and that the block had been previously dedicated to the public for a public square; that such dedication had been accepted by the public, and that the village was simply possessing itself of the block for its own benefit: *Held,* that a judgment for the defendant upon such issues must be regarded as *res judicata* so far as the right of the village to possess and use the block as and for a public square was concerned, and also conclusive upon lot owners in the village to the rights they might otherwise have to such use of the block, because their rights were dependent upon those of the village.

7. SAME—*gist of the action.* While the action of trespass *quare clausum fregit* does not necessarily involve the title or seizin, yet the gist of the action is the injury to the possession. Hence, the judgment in such action will ordinarily be conclusive upon the right of possession.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

This is a bill filed by plaintiffs in error against the defendant in error to enjoin the latter from interfering with the possession of, or title to, a block of ground, alleged to be a "public square," and to declare a deed of the same executed to, and held by, defendant in error, to be null and void. A demurrer was filed to the bill, the demurrer was sustained, and the bill was dismissed. The case is brought here by writ of error.

The facts alleged in the bill are substantially as hereinafter set forth. On March 1, 1854, one Mary McGinnity, since deceased, was seized in fee of 80 acres in Richwoods township in Peoria County, upon which she then was, and for a long time had been, living with her husband, Hugh W. McGinnity.

On that day, Hugh W. McGinnity made a plat of said premises, or of a part thereof, and wrote upon the face thereof the
words: "Plat of McGinnity's Addition to the City of Peoria,"
and recorded the same. The plat shows, that the property
was laid off into streets and alleys and blocks, and that all
the blocks, except one, were divided into lots, but that in the
center of the plat is one entire block, not subdivided into lots,
upon the face of which are the words: "Public Square," and
drawings of trees. A copy of the plat is attached to the bill,
and it is therein alleged, that such plat "has been recognized
by the general public as a valid plat, and that innumerable
conveyances have been made with reference thereto." On
May 20, 1856, Mary McGinnity obtained a divorce from
Hugh W. McGinnity for his fault. Thereafter, while sole she
accepted conveyances to herself of certain of said lots which
had been previously conveyed away, such conveyances designating the property therein described as being in McGinnity's
Addition to the City of Peoria; and she made conveyances of
property embraced in said plat, designating such property as
being "In McGinnity's Addition to the City of Peoria." Her
grantees therein at once recorded their deeds, and took possession thereunder, and have since continued such possession.
On July 29, 1856, she conveyed by warranty deed to Frederick Wurst, father of plaintiffs in error, lots 1, 2 and 3 in
block 13 in McGinnity's Addition, the conveyance describing
the property with reference to the plat of said Addition as
recorded; and said Wurst recorded his deed, and went into
possession thereunder, and remained in possession until 1864,
when he died intestate leaving his children and heirs at law
the plaintiff in error, Frederick Wurst, then six years old, and
the plaintiff in error, David Wurst, then three years old, and
their sister, who still own and are in possession of said lots as
tenants in common. It is alleged in the bill, that the "devotion of said block for the purpose of a 'Public Square' as indicated upon said plat is a valuable easement to all of the

20—150 ILL.

property embraced in said McGinnity's Addition," and that, when said Wurst made his purchase, and for many years thereafter, said block was unoccupied, and was used and enjoyed by the complainants and by the public as and for a "public square."

On February 28, 1870, Mary McGinnity, then Mary Zotz, conveyed by quit-claim deed to the defendant, John Comstock, said block describing it therein as follows: "All of a certain parcel of land in Peoria County, Illinois, described as follows: being the block not numbered, situated in McGinnity's Addition to the City of Peoria, as laid off by said McGinnity on, etc., bounded on the east by Atlantic street, on the north by President, on the west by Central, on the south by Kansas streets in said Addition." It is alleged, that said public square is the only block in said Addition which is not numbered; that it is surrounded by said streets which are the only streets of those names in said Addition; that said Comstock has no other title to said premises than that acquired by said quit-claim deed; that he then went into exclusive possession of said Square and fenced the same, and remained in possession until 1891 when he was dispossessed for a time as hereafter stated, but was again in the exclusive possession thereof, claiming it as his private property, and threatening to appropriate it to his private use and deprive the public of all enjoyment thereof; that, when he obtained his deed, he knew the land was intended for a public square, and that said Wurst purchased his lots in the belief that said land would be used for a public square, and for that reason; that, until 1888, said block was never taxed being marked upon the assessor's books, "Public Square, Not Taxable;" and that said Comstock never paid any taxes upon said block until 1888, when he procured the same to be assessed by the township assessor.

The remaining allegations of the bill are as follows: "And that in the year 1883 the village of North Peoria was organized under the general law, embracing within its territorial

limits all of said McGinnity's addition and other lands, and that said village has continued to exist, and exercise the functions of a village, from the time of its organization hitherto; and that in 1891 said village removed all of said fences, and said Comstock brought an action of trespass against said village and the officers, charging them with trespassing upon his close, in which suit defendants pleaded, among other things, that said tract of ground had previously been dedicated to the public as and for a public square, and that the public had accepted it as such, and that defendants, by authority of said village, had committed the supposed trespasses; and defendants pleaded other pleas, alleging title in said village to said premises, and that said defendants were simply possessing themselves of the property of said village for its benefit and under its directions; and afterwards the court pronounced judgment in said case in favor of plaintiff, which judgment remains in full force, and is a final and conclusive adjudication against the claim of the village of North Peoria for possession of said square; and that it was the duty of said village to sue for the possession of said square, and that after the organization of said village no right of action existed in favor of complainants herein, or in favor of any other private individuals, for the trespasses and wrongs of the defendant, Comstock, herein complained of, until after it was judicially determined that the said village could not maintain an action against said Comstock, and that during the time the right of action for said wrongs was in said village exclusively, complainants herein were guilty of no *laches,* and the running of the Statute of Limitations as against them was suspended, and the said Comstock could not, by his possession of said square during such period, acquire any title or strengthen any claim thereto against orators."

Mr. ARTHUR KEITHLEY, for the plaintiffs in error.

Messrs. Stevens & Horton, and Messrs. Jack & Tichenor, for the defendant in error.

Mr. Justice Magruder delivered the opinion of the Court:

Hugh W. McGinnity was not the owner of the premises when he executed and recorded the plat. The fee was then in his wife, Mary McGinnity. Whatever interest in the land he may have had as the husband of his wife ceased when the divorce was granted for his fault. (1 Starr & Cur. page 904, sec. 14; *Rendleman* v. *Rendleman,* 118 Ill. 257). It follows, that there was no effectual dedication of the square by reason of the execution and recording of the plat. "A dedication of property for public use is in the nature of a conveyance for the purposes of the use; but a person can convey or donate no more or greater title than he holds. If he has no title, or his title is conditional, and it fails, the dedication fails." (*Gridley* v. *Hopkins,* 84 Ill. 528).

Here, it appears from the plat, attached to the bill, that the lots of plaintiffs in error do not front upon the block claimed to be a public square, but upon a street at some distance from the block, and not running by it; nor does the bill allege that any of the lots conveyed to and by Mrs. McGinnity fronted upon the block in question. Whether or not Mrs. McGinnity and her grantee are estopped from denying, that the block was dedicated to the public as a "public square" because of her alleged recognition of the plat by receiving and making conveyances with reference to the plan therein indicated, is a question which does not properly arise in this case in view of the allegations of the bill in regard to the judgment in the trespass suit.

The rights of the public, if it had any, to the use of the block as a "public square" prior to 1883 became vested in the village of North Peoria when it was organized in that year. From that time the incorporated village was the representative of the public; and whatever easements or privileges the pur-

chasers of lots in the Addition were entitled to claim in the "square," as appurtenant to their lots, must be regarded "as belonging to them as a part of the" village thus incorporated. (*Zearing* v. *Raber*, 74 Ill. 413; *Maywood Co.* v. *Village of Maywood*, 118 id. 61). In 1891 the village attempted to assert its claim to the block in question by removing therefrom the fences of the defendant in error, Comstock, who had taken possession of the block in 1870 under a quit-claim deed from Mrs. McGinnity, and had remained in possession for more than twenty years. Defendant in error "was dispossessed for a time" by these acts of the village, but at once brought an action of trespass *quare clausum fregit* against the village and its officers. The bill alleges that the trial of this action resulted in a judgment in favor of the defendant in error, and against the village, and that the judgment still remains in full force, and "is a final and conclusive adjudication against the claim of the village of North Peoria for possession of said square."

It has been held, that, if, in an action of trespass *quare clausum fregit*, the defense pleaded is *liberum tenementum*, judgment for the plaintiff is conclusive upon the defendant when he afterwards attempts to set up title, subject to the qualification that the close described in the second action is the same as that described in the first. Other decisions hold that, while the judgment in such case will not be regarded as conclusive, yet it may be shown by parol testimony or otherwise, that the question of title was actually tried and passed upon in the action of trespass. (*Dunckle* v. *Wiles*, 5 Denio, 296; *Moran* v. *Mansur*, 63 N. H. 377; *Parker* v. *Leggett*, 13 Rich. (S. C.) 171; *Campbell* v. *Cross*, 39 Ind. 155; *White* v. *Chase*, 128 Mass. 158; *McKnight* v. *Bell*, 135 Pa. St. 358; *Stapleton* v. *Dee*, 132 Mass. 279; Wells on Res Adjudicata and Stare Decisis, sec. 315; 21 Am. & Eng. Ency. of Law, 244; *Dean* v. *Comstock*, 32 Ill. 173.) Such a judgment is necessarily conclusive as to what appears from the record, or is

shown by parol, to have been involved in the issues made by the pleadings in the suit, and to have actually come in question on the trial. (*Dunckle* v. *Wiles, supra;* 21 Am. & Eng. Enc. of Law, 185.) While the action of trespass *quare clausum fregit* does not necessarily involve the title or seizin, yet the *gist* of the action is the injury to the possession. (*Dean* v. *Comstock, supra; Fort Dearborn Lodge* v. *Klein,* 115 Ill. 177; 2 Greenl. on Ev. 613.) Hence, the judgment in such action will ordinarily be conclusive upon the right of possession. (*White* v. *Chase, supra;* 2 Greenl. on Ev. secs. 625, 626; 2 Hilliard on Torts, page 11; *Lee* v. *Town of Mound Station,* 118 Ill. 304.)

In the case at bar, the bill states specifically what defences were pleaded by the village in the action of trespass. The pleas therein filed alleged title in the village; that the block in question had been previously dedicated to the public as and for a public square; that such dedication had been accepted by the public; and that the village was simply possessing itself of the block for its own benefit. The issues made by the pleas were decided adversely to the village. The questions of title, and of the right of possession, and of dedication and acceptance, appear to have been passed upon, and determined in favor of the defendant in error. There is nothing to show, that the judgment rendered in the trespass suit upon the issues thus stated has ever been reversed, and, as long as it stands, it must be regarded as *res judicata,* so far as the rights of the village to possess and use the block as and for a public square are concerned. The judgment is also conclusive upon any rights, which the plaintiffs in error might otherwise have to such use of the block, because their rights are dependent upon those of the village, and can only be derived and held through the village, as the representative of the public.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*